**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CORTEZ TYREE,** <br> c/o Friedman & Gilbert <br> 55 Public Square, Suite 1055 <br> Cleveland, Ohio 44113, <br><br>      Plaintiff, <br><br> -vs- <br><br> **CUYAHOGA COUNTY,** <br> **CORRECTIONAL OFFICER BAKER,** <br> **CORRECTIONAL OFFICER CLEMENS,** <br> **CORRECTIONAL OFFICER DUNN,** <br> **UNNAMED DEFENDANTS 1-5,** <br> c/o Cuyahoga County Prosecutor's Office <br> The Justice Center, Courts Tower <br> 1200 Ontario Street, 8th Floor <br> Cleveland, Ohio 44113, <br><br>      Defendants. | CASE NO. <br><br> JUDGE <br><br><br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Cortez Tyree for his complaint against Defendants Cuyahoga County, Correctional Officer Baker, Correctional Officer Clemens, Correctional Officer Dunn, and Unknown Defendants 1 through 5, alleges as follows:

### INTRODUCTION

1.     This is a civil rights action. On July 7, 2018, Defendants Correctional Officers Baker, Clemens, and Dunn, along with Unknown Defendants 1-5, brutally beat and maced Plaintiff Cortez Tyree in his housing pod and again in an elevator, and then held him in a restraint chair for hours.

2.     Defendants' unprovoked and unnecessary actions constituted excessive force against Plaintiff Cortez Tyree, in violation of his constitutional rights.

3.     Defendant Baker subsequently threatened against Plaintiff if he talked about this brutal attack.

4.     Defendant Cuyahoga County is also liable for Tyree's trauma, injuries, and damages. Cuyahoga County's unconstitutional policies, practices, and customs in place at the time of this incident are the moving force behind the misconduct committed by Defendants Baker, Clemens, Dunn, and Unknown Defendants 1-5.

5.     Cuyahoga County Corrections Center (CCCC) is operating under a state of constant crisis, endangering the health and safety of Detainees/Inmates and staff alike on a daily basis. CCCC is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a chaotic and perilous environment inside the jail walls. Detainees and Inmates, including Plaintiff Tyree, are subjected to ongoing patterns of unconstitutional conditions of confinement within CCCC, including, *inter alia*, the right to be free from unreasonable seizure, pursuant to the Fourth Amendment, and the right to be free from prior restraint and retaliation for lawful speech, pursuant to the First Amendment. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at CCCC, yet have failed to timely or effectively remedy the deplorable state of affairs.

### JURISDICTION AND VENUE

6.     The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

7.     Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or,

at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

PARTIES

9.  Plaintiff Cortez Tyree, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County.

10. Defendant Correctional Officer Baker was, at all times relevant to the allegations made in this complaint, a duly appointed correctional officer employed by Cuyahoga County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

11. Defendant Correctional Officer Clemens was, at all times relevant to the allegations made in this complaint, a duly appointed correctional officer employed by Cuyahoga County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

12. Defendant Correctional Officer Dunn was, at all times relevant to the allegations made in this complaint, a duly appointed correctional officer employed by Cuyahoga County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

13. Unknown Defendants 1 through 5 were, at all times relevant to the allegations made in this complaint, duly appointed correctional officers employed by Cuyahoga County, acting within the scope of their employment and under the color of state law. They are sued in their individual capacities.

14. Defendant Cuyahoga County is a municipal corporation, duly incorporated under the laws of the State of Ohio and located in this judicial district, is the employer and principal of

Defendants Baker, Clemens, Dunn, and Unknown Defendants 1 through 5, and is responsible for the training, supervision, policies, practices, and customs of the CCCC.

FACTS

**Defendants' Brutal Attack on Cortez Tyree and Aftermath**

15.     Cortez Tyree is a 28-year-old African American man. On July 7, 2018, he was in custody at the CCCC.

16.     That morning, Tyree called his wife on the phone in his housing pod. He was on the phone with her when "pill call" commenced—when prescribed medications are passed to inmates/detainees by jail medical staff.

17.     At that time, Defendant Correctional Officer Baker was assigned to Tyree's housing pod, and was present in the pod.

18.     Based on conflicting instructions and practices from correctional staff—including Defendant Correctional Officer Baker—over the course of his time at CCCC, Tyree was under the impression that he did not need to "lock down" for pill call, meaning he was not required to end his phone call or return to his cell.

19.     Defendant Baker told Tyree to get off the phone.

20.     Tyree refused to get off the phone and continued to speak to his wife.

21.     Tyree did not threaten Baker or otherwise take actions to cause Defendant Baker to fear for his own safety or the safety of others.

22.     In response to Tyree's refusal, even though non-violent options were available, Defendant Baker opted to initiate violence against Tyree.

23.     Defendant Baker called the Special Response Team (SRT) to respond to the pod.

24.     SRT officers, led by Defendant Correctional officer Clemens and including Defendant Correctional Officer Dunn and Unknown Defendants 1 through 5, ran into the pod.

25.     Tyree was still sitting on the floor, speaking to his wife when the SRT Defendants ran into the pod.

26.     Defendant Correctional Officer Clemens jumped on and started punching Tyree.

27.     The SRT officers, including Defendant Correctional Officer Dunn and Unknown Defendants 1 through 5, joined Clemens in this brutal assault. They punched and kicked Tyree, and elbowed him in the face, even though he was already on the ground.

28.     Defendant Baker also joined the SRT officers, hitting and kicking Tyree on the ground.

29.     Tyree experienced extreme pain and fear during this assault.

30.     Defendants then deployed oleoresin capsicum spray at Tyree, blinding him and causing extreme pain and burning sensations.

31.     Defendants Baker, Clemens, Dunn, and Unknown Officers 1 through 5 then strapped Tyree into a restraint chair.

32.     Defendants took Tyree, still strapped into the restraint chair, to the CCCC Medical Unit for a brief assessment.

33.     Afterward, Defendants wheeled Tyree, in the restraint chair, into an elevator.

34.     When the doors closed, Defendants began a second brutal attack on Tyree, punching him in the head, face, and stomach.

35.     During this second attack, Tyree felt his ear pop and felt extreme pain.

36.     During each of these attacks, Tyree did not threaten Defendants nor present any threat to the safety of any Defendant or anyone else.

37.     During each of these attacks, the force used by Defendants was excessive, unreasonable, unnecessary, and without probable cause.

5

38.     During each of these attacks, each Defendant officer had the duty and opportunity to intervene to prevent the use of excessive force against Tyree yet did nothing to assist or protect him or to prevent the brutality.

39.     The actions of the Defendants were taken jointly, in concert, and with shared intent.

40.     After the second attack, Defendants wheeled Tyree into a cell and left him there, strapped into a restraint chair, for approximately four hours.

41.     During this time, no one checked his vital signs or inquired about circulatory problems.

42.     Defendants strapped Tyree into the restraint chair very tightly. He was in extreme pain, and his hands and feet were numb during this four-hour period.

43.     Defendants' use of force via the restraint chair was excessive, unreasonable, unnecessary, and without probable cause.

44.     With respect to the force deployed against Tyree via use of the restraint chair, each Defendant officer had the duty and opportunity to intervene to prevent the use of excessive force against Tyree yet did nothing to assist or protect him or to prevent the brutality.

45.     After he was finally removed from the restraint chair, Tyree was taken to the Medical Unit again.

46.     At this time, Tyree's jaw was so swollen that he was barely able to speak, and he had two black eyes. He also could not hear out of his right ear.

47.     Two days later, after his criminal defense lawyer advocated for him, Tyree was finally transported to a MetroHealth System facility for treatment.

48.     At MetroHealth, Tyree was diagnosed with a fractured jaw and burst eardrum.

49.     Tyree was unable to chew food for weeks, and his jaw took considerable time to heal.

50.     Tyree is still unable to hear out of his right ear at the time of this complaint.

51.     Tyree was denied access to kites in the period immediately following this attack, and has been deprived of access to a functioning grievance system since the date of this attack due to the broken state of the grievance system in the CCCC.

52.     After this attack, Tyree was placed in solitary confinement, where correctional staff messed with his food by giving him smaller portions and empty milk containers.

53.     Tyree continues to experience severe emotional distress related to these events. The effects of this trauma are ongoing. He sees Defendant Officer Clemens in the jail regularly and is fearful.

54.     At the end of June 2019, Defendant Baker threatened Tyree in relation to the July 2018 attack, warning him, "If you tell anyone, something else is going to happen."

55.     As a result of Defendant Baker's threat, Tyree remains fearful that Defendants and/or other CCCC staff will retaliate against him for talking to others about their brutal beatdown against him. Tyree is afraid that something bad will happen to him in the jail. He does not feel safe.

56.     Tyree now refrains from discussing this matter within the CCCC and does not discuss it with other inmates/detainees.

57.     Defendants' actions were without probable cause, unjustified, and objectively unreasonable.

58.     In violating Tyree's Constitutional rights, Defendants Baker, Clemens, Dunn, and Unknown Defendants 1 through 5 engaged in willful, wanton, reckless, and/or negligent conduct. Defendants' conduct was the direct, actual, and proximate cause of Tyree's injuries.

59.     Defendants acted under color of law and deprived Plaintiff of federally protected rights, in violation of Title 42 U.S.C. §1983.

60.     As a direct and proximate result of Defendants' conduct, Tyree sustained physical and psychological injuries, including, *inter alia*, severe pain, fear, humiliation, and disability.

61.     The injuries suffered by Tyree were all preventable had Defendants not engaged in illegal conduct in violation of Tyree's fundamental rights.

**Unconstitutional Conditions at the Cuyahoga County Corrections Center**

62.     Defendant Cuyahoga County ("the County") is responsible for the Cuyahoga County Corrections Center (CCCC), including the care and treatment of Detainees/Inmates—like Cortez Tyree—in custody therein. The County is required to ensure that the policies, practices, and customs of the CCCC comply with federal and Ohio law concerning the treatment of persons in custody.

63.     Unconstitutional and deplorable conditions in the CCCC are a historic problem. Defendants have long been on notice of – and have even taken action to worsen – these conditions, and have long been on notice of the incompetent supervision and management of the CCCC.

64.     The CCCC has been subjected to federal court monitoring at least twice in response to unconstitutional conditions of confinement within the jail.

65.     The County's track record of operating the CCCC demonstrates continued indifference and longstanding, systematically unconstitutional operational procedures.

66.     CCCC today operates in complete crisis. Upon information and belief, at least nine people died in CCCC over the past year, and over 55 people attempted suicide while in CCCC custody in 2018. The rates of in-custody deaths, assaults by correctional officers, deprivations of basic human rights, and safety of Detainees/Inmates and staff alike have all reached emergency levels.

67.     Detainees/Inmates and their families have raised innumerable concerns and complaints about deplorable conditions. Some CCCC staff have quit their jobs in protest. Other

stakeholders, including judges in the Cleveland Municipal Court and Cuyahoga Common Pleas Court, have expressed serious concern over jail conditions and the manner in which the facility is being operated.

68.     As of November 2017, the Ohio Department of Rehabilitation and Corrections' (ODRC) Bureau of Adult Detention inspection found CCCC was not in compliance with Ohio's Minimum Standards for Adult Detention Centers. (ODRC Bureau of Adult Detention Report attached as Exhibit 1.)

69.     Likewise, the Pretrial Justice Institute (PJI) found in 2017 that CCCC was overcrowded. The PJI report found that on average, CCCC has been operating at over 100% capacity for four of the past five years. (*See* Pretrial Justice Institute, "Enhancing Pretrial Justice in Cuyahoga County: Results from a Jail Population Analysis and Judicial Feedback," September 2017, available at  https://university.pretrial.org/HigherLogic/System/DownloadDocumentFile. ashx?DocumentFileKey=c4587ef2-8416-18fe-e19d-b188d3691e93&forceDialog=0.)

70.     Further, the Cuyahoga County Bail Task Force found in March 2018 that Inmates/Detainees remain in CCCC custody for unnecessarily long periods of time.

71.     The County has long been on notice of overcrowding and medical and mental health issues—since at least 2017—but has not remedied this critical problem and instead has increased overcrowding.

72.     Further, the United States Marshals Service (USMS) issued a report on November 21, 2018 condemning the conditions in the CCCC. This report documented numerous failings discovered in USMS's thorough review of conditions, policies, and practices at CCCC. The report concluded that conditions in CCCC are inhumane and dangerous for both Inmates/Detainees and corrections officers. (USMS Report attached as Exhibit 2).

73.     The USMS Report findings include, but are not limited to:

a.  Failure to utilize generally-accepted best practices for Use-of-Force teams to ensure staff and Detainee/Inmate safety;

b.  Failure to tag and label as evidence all video tapes involving use-of-force incidents;

c.  Failure to require all persons involved in use-of-force incidents to complete written reports; and

d.  Failure to train annually on safety/security/fire/medical procedures and supervision of offenders.

74.     The USMS report found that CCCC is severely overcrowded and identified 96 corrections officer vacancies, indicating severe understaffing. The report states, "as a result of the high vacancy rate and excessive staff call outs, the CCCCs daily operation is greatly impacted regarding provision for detainees'/inmates' basic needs."

75.     Critically, over 100 Detainee/Inmate interviews conducted by the USMS review team revealed "strong and consistent allegations of brutality, use of force punishment, and cruel treatment of the Security Response Team (SRT)," who dress in para-military uniforms.

76.     These reports obtained by USMS are consistent with Cortez Tyree's experiences at the hands of the Defendants in this case, including several SRT officers.

77.     The USMS review team also observed SRT officers verbally abusing and aggressively interacting with Detainees/Inmates, and observed aggressive conduct and abusive, explicit language directed at Detainees/Inmates by SRT members.

78.     A strong threat of retaliation faces Plaintiff and anyone else in the custody of Cuyahoga County who comes forward with information about the conditions at CCCC.

79.     SRT officers escorting Detainees/Inmates to interviews with the USMS review team called those Detainees/Inmates "snitches." The behavior was so threatening and dangerous

10

that the USMS review team requested up to ten Detainees/Inmates be removed from CCCC custody for fear of retaliation and Detainee/Inmate safety.

80.     USMS' documentation of correctional officers threatening Detainees/Inmates for exposing the conditions in CCCC is consistent with the experience of Cortez Tyree.

81.     Further, as evidenced in the USMS report and inmates' and detainees' accounts—including Cortez Tyree—CCCC is in violation of the Ohio minimum jail standards, as defined in Ohio Admin. Code § 5120:1-8. These violations include, but are not limited to:

      a.   Failure to limit use of force to "the amount of force necessary to control a given situation," where "in no event is physical force used as punishment";

      b.   Failure to ensure that disciplinary measures do not include corporal punishment or withholding food;

      c.   Failure to ensure no retaliation by staff for inmate grievances.

82.     Compounding these violations, CCCC's grievance system is broken, leaving Detainees/Inmates—including Cortez Tyree—with no functional avenue to seek redress of their serious needs and legitimate complaints concerning conditions of confinement and rights violations, depriving them of due process. Detainees'/Inmates' complaints, kites, and grievances are not delivered and/or go unanswered. Their complaints remain unaddressed, and their suffering continues unabated.

### FIRST CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 Claim for Unconstitutional Seizure
### against Defendants Baker, Clemens, Dunn, and Unknown Defendants 1 through 5

83.     All of the foregoing paragraphs are incorporated as though fully set forth here.

84.     The actions of Defendants Baker, Clemens, Dunn, and Unknown Defendants 1 through 5, as alleged in the preceding paragraphs, violated Cortez Tyree's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable

seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

85.     Cortez Tyree was subjected to the use of excessive force in violation of his Fourth Amendment rights.

86.     Defendants further had the duty and opportunity to intervene to protect Tyree and to prevent the use of excessive force against him, yet they did nothing to assist him or prevent the brutality meted out by fellow officers.

87.     Defendants' conduct during and after this attack constitutes cruel and unusual punishment in violation of Tyree's constitutional rights.

88.     Defendants' actions as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above and of Tyree's injuries.

89.     Defendants are jointly and severally liable for this conduct.

### SECOND CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 Claim for First Amendment Retaliation—Prior Restraint against Defendant Baker

90.     All of the foregoing paragraphs are incorporated as though fully set forth here.

91.     It is "well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997).

92.      At all material times, Cortez Tyree was engaged in constitutionally protected activity, exercising his clearly established First Amendment rights to lawful speech.

93.     Defendant Baker effected an unlawful prior restraint on Tyree by extinguishing his speech, and threatening a physical confrontation, effecting and enforcing an unlawful heckler's veto.

94.     Defendant Baker's adverse actions injured Tyree by restraining, preventing, and impairing his lawful speech in a way likely to chill a person of ordinary firmness from propounding further lawful speech.

95.     Defendant Baker's adverse actions directly prevented Tyree from continuing to engage in his fully protected constitutional activity in the time and manner of his choosing.

96.     Defendant Baker was motivated to take these adverse actions in whole or in part because of the content of Tyree's constitutionally protected speech.

97.     Defendant Baker's adverse actions violated Tyree's clearly established First and Fourteenth Amendment rights in light of clearly established law. No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

98.     Defendant Baker's actions violate the First and Fourteenth Amendments via 42 U.S.C. § 1983.

99.     As a direct and proximate result of Defendant Baker's unlawful activity, Plaintiff has suffered and continues to suffer the injuries damages set forth above.

100.     Defendant Baker's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant Baker and others from engaging in this type of unlawful conduct.

### THIRD CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 *Monell* Claim
### against Defendant Cuyahoga County

101.     All of the foregoing paragraphs are incorporated as though fully set forth here.

102.     The actions of the individual Defendants, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of Defendant Cuyahoga County.

103.    Defendant Cuyahoga County, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

104.    Despite the facts and circumstances surrounding these uses of force which clearly demonstrate that the actions of the individual Defendants were unreasonable and unlawful, upon information and belief, Cuyahoga County has failed to effectively investigate or impose any discipline on the individual Defendants for their illegal behavior.

105.    At all times relevant, the Defendant Cuyahoga County and its CCCC had interrelated de facto policies, practices, and customs which included, *inter alia*:

a.   the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in unjustified use of excessive and/or unreasonable force;

b.   the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of force against inmates/detainees;

c.   the failure to properly investigate the use of excessive and unreasonable force against CCCC inmates/detainees;

d.   the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in unjustified use of excessive and/or unreasonable force via use of restraint chairs;

e.   the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of restraint chairs against inmates/detainees;

f.   the failure to properly investigate the use of excessive and unreasonable force via restraint chair use against CCCC inmates/detainees;

g.   the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in threats or retaliation against inmates/detainees;

14

h. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs concerning correctional officer threats and retaliation against inmates/detainees;

i. the failure to properly investigate correctional officer threats and retaliation against CCCC inmates/detainees;

j. the code of silence.

106. The aforementioned de facto policies, practices, and customs of Cuyahoga County include acts of excessive use of force, retaliation, and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

107. Cuyahoga County has engaged in little or no meaningful investigation or disciplinary action in response to the misconduct of its correctional officers, thereby creating a culture or climate where CCCC correctional staff can escape accountability for their acts of misconduct with impunity.

108. These municipal defendants were the moving force behind the conduct of the individual Defendants in brutalizing, threatening, and retaliating against Cortez Tyree.

109. The policy, practice, and custom of a code of silence results in correctional officers refusing to report instances of misconduct of which they are aware, including unlawful searches, seizures, despite their obligation under jail regulations to do so, and also includes correctional officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

110. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control correctional officer misconduct and the code

of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize correctional officers from discipline.

111.    That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread CCCC policy, practice, and custom is further established by the involvement in, and ratification of, these acts by supervisors and County policymakers, as well as by a wide range of other officials, officers, and divisions of the CCCC.

112.    The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Cortez Tyree because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

113.    But for the belief that they would be protected—both by fellow officers and by Cuyahoga County—from serious consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Cortez Tyree.

114.    The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the acts alleged in this complaint against Tyree.

115.    Cuyahoga County therefore acted as the moving force behind and the direct and proximate causes of the violations of Cortez Tyree's constitutional rights and all injuries and damages suffered by him.

### FOURTH CLAIM FOR RELIEF
### State Law Claim for Negligence - Willful, Wanton and Reckless Conduct
### against Defendants Baker, Clemens, Dunn, and Unknown Defendants 1 through 5

116.    All of the foregoing paragraphs are incorporated as though fully set forth here.

117.     Defendant Correctional Officers acted negligently when they violated their duty to exercise due care for Cortez Tyree.

118.     Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as correctional officers at the CCCC.

119.     Defendants' misconduct directly and proximately caused the injuries and damages suffered by Cortez Tyree as described above.

120.     Defendants are jointly and severally liable for this conduct.

**FIFTH CLAIM FOR RELIEF**
**State Law Claim for Assault and Battery**
**against Defendants Baker, Clemens, Dunn, and Unknown Defendants 1 through 5**

121.     All of the foregoing paragraphs are incorporated as though fully set forth here.

122.     Defendants' conduct created in Cortez Tyree the apprehension of an imminent, harmful, and offensive touching and constituted a harmful and offensive touching, made knowingly and without legal justification.

123.     Defendants' misconduct directly and proximately caused the injuries and damages suffered by Cortez Tyree as described above.

124.     Defendants are jointly and severally liable for this conduct.

**PRAYER FOR RELIEF**

Plaintiff demands that judgment be entered in his favor on all counts and prays the Court to award the following relief:

a.     An award of actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate Cortez Tyree for the injuries and damages he suffered;

b.     An award of punitive damages against Defendants Baker, Clemens, Dunn, and Unknown Defendants 1 through 5 in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

17

c.      Issue an injunction requiring Defendants to immediately refrain from the use of excessive force and retaliation against Plaintiff Cortez Tyree;

d.      Issue an injunction requiring Defendant Cuyahoga County to immediately discipline the Correctional Officer Defendants for their use of excessive force and retaliation against Plaintiff Cortez Tyree;

e.      Issue an injunction requiring Defendants and their agents, employees, officials, and all persons acting in concert with them under color of state law, to develop and implement, as soon as practicable, a plan to eliminate the substantial risk of serious harm suffered by Plaintiff Cortez Tyree and all other Inmates/Detainees in the CCCC as a result of Defendant Cuyahoga County's policies, practices, customs, and failures to train and supervise correctional staff, as set forth herein;

f.      An award of attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988; and

g.      All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

**_TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED._**

Dated: July 3, 2019

_/s/ Jacqueline Greene_
Jacqueline Greene (0092733)
Sarah Gelsomino (0084340)
Terry Gilbert (0021948)
FRIEDMAN & GILBERT
55 Public Square, Suite 1055
Cleveland, Ohio 44113
P (216) 241-1430
F (216) 621-0427
jgreene@f-glaw.com
sgelsomino@f-glaw.com
tgilbert@f-glaw.com

_Counsel for Plaintiff_